UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| E.F.,<br><br>              **Plaintiff**<br><br>v.<br><br>**AMERICA WEST AIRLINES, INC.,**<br><br>              **Defendant** | C.A. No. 05-11391GAO |

**DEFENDANT'S, AMERICA WEST AIRLINES, INC.,
MOTION FOR APPOINTMENT OF GUARDIAN AD LITEM and INCORPORATED
MEMORANDUM of LAW**

Now comes the Defendant, America West Airlines, Inc., (hereinafter referred to as "America West") pursuant to Fed. R. Civ. P. 17(c) and hereby moves this honorable Court to appoint a guardian ad litem to act on behalf of the minor Plaintiff, E.F.[1] In support of this Motion, America West submits this incorporated memorandum of law and the affidavit of counsel, Carey L. Bertrand.

**Introduction**

On February 12, 2004, three days after his fifth (5th) birthday, Plaintiff, E. F. was traveling on an America West flight with his sister, who was two months shy of her sixth (6th) birthday, as part of America West's unaccompanied minor program (UM). The children were traveling from Boston to Phoenix to visit their father who lived in Arizona. Plaintiff's Complaint alleges that E.F. defecated in his pants because the assigned flight attendant was unavailable to assist him and was constantly absent attending to other duties. Plaintiff claims a male passenger took E.F. to the bathroom to clean him and removed his underwear and assaulted him. Plaintiff's mother has brought suit on behalf of E.F.

---

[1] Counsel conferred on June 15, 2006 pursuant to L.R. 7.1(A)(2) and have been unable to resolve this matter or narrow the issue.

59421.1

1

The actual facts of what occurred on this flight are contrary to Plaintiff's allegations. A female passenger, with America West's knowledge and approval, cleaned the Plaintiff off after he had defecated in his pants in a bathroom with the door open in front of witnesses. An America West flight attendant was outside of the bathroom and took the dirty underwear from the female passenger after she had cleaned the Plaintiff off. There was no assault by a male passenger, thus, this is not a sexual abuse case and is far from it. Given these facts, America West has focused on resolution of this matter by way of settlement. Plaintiff's former counsel, Attorney Donnelly, engaged in settlement discussions with Attorney Bertrand over a period of time until settlement discussions abruptly ended. Given the last demand made by Plaintiff and the abrupt ending of settlement discussions with the termination of Attorney Donnelly, America West believes that the appointment of a guardian ad litem is necessary to ensure that someone is acting solely within the best interests of E.F. as it is questionable as to whether E.F.'s mother can act in the best interests of E.F. given what has transpired with regard to settlement of this matter.

**<u>Argument</u>**

Federal Rule of Civil Procedure 17(c) states, "…[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant of incompetent person." "If there is a conflict of interest between the minor or the next friend, federal courts may appoint a guardian or attorney ad litem to protect the interest of the represented party in the case." *Moore's Federal Practice-Civil, 4-17 §17.21[3][a](citations omitted).* It is within the Court's discretion to determine whether the appointment of a guardian is necessary. *See N.O. et al. v. Callahan et al., 110 F.R.D. 637, 648 (D. Mass. 1986); See also Moore's Federal Practice-Civil, 4-17 §17.21[3][a](citations omitted).* "Massachusetts law does not require an adjudication of

59421.1

2

incompetence under M.G.L. c. 201 §6 in order to appoint a guardian ad litem…" *See N.O., supra at 649*. This Court has the discretion to appoint a guardian ad litem to protect the interests of E.F. pursuant to both Fed. R. Civ. P. 17(c) and state law. *Id.*

Although E.F. is represented by a next friend, his mother, the Court possess an inherent power to appoint a guardian ad litem when it appears that the minor's general representative has interests which may conflict with those of the person [she] is supposed to represent. *See Rubin et al v. Smith, Sr. et al., 882 F. Supp 212, 216, (D. N.H. 1995)(citing Hoffert v General Motors Corp., 656 F.2d 161, 164 (5th Cir. 1981). Cert. denied sub nom., Cochrane & Bresnahan v. Smith, 456 U.S. 961 (1982)(emphasis added)(citations omitted); see also Horacek v. Exon, 357 F. Supp. 71, 74 (D. Neb. 1973)(noting that while "parents in all good conscience may desire one remedy…it would not necessarily be in the best interests of [their] children" and indicating that "a discreet course would be to provide for the appointment of a guardian ad litem, who would not displace the parents as representatives of the plaintiffs but would be alert to recognize potential and actual differences in positions asserted by the parents and positions that need to be asserted on behalf of the plaintiffs").* Moreover, "the next friend bears the burden of proving his or her suitability according to three general criteria that are independent of the law of the forum state." *See Moore's Federal Practice-Civil, 4-17 §17.25[2]*. "The criteria are (1) an adequate explanation of why minor or incompetent may not bring the suit himself or herself; (2) a true dedication to the best interests of the minor or incompetent represented by the next friend; and (3) some significant relationship with the minor or incompetent. *See Moore's Federal Practice-Civil, 4-17 §17.25[2](citations omitted)*. It is clearly that in this instant matter, E.F.'s mother has satisfied two of the three criteria mentioned above, (1) and (3). E.F. cannot bring the suit himself as he was only six(6) when the lawsuit was filed. Since the Plaintiff is Ms. F's son, there is a

59421.1

significant relationship.  However, given the facts of this case and the conduct of Plaintiff's next friend thus far, it is not clear that Ms. F. has the ability to maintain a true dedication in this litigation to the best interests of E.F.

As mentioned previously, the facts of this case are markedly different from the allegations contained in the Complaint.  Attorney Bertrand has spoken with the passengers who came in contact with E.F. on board the Flight 526 and it is clear based on these conversations with the passengers that a male passenger did not assault E. F. *See affidavit of Attorney Bertrand, attached hereto as Exhibit 1, ¶ 7, 10, 11*.  In fact, a female passenger cleaned E.F. off after he defecated in his pants in his seat.  *Ex. 1 ¶8-13*.   A male passenger who was seated next to E.F. brought him to the bathroom and a female passenger took E.F. into the bathroom to clean him off.  *Ex. 1 ¶3-7, 10-13*.  The female passenger cleaned E.F. off with the bathroom door open. *Ex. 1 ¶ 7, 11*.  A flight attendant was outside of the bathroom door while the female passenger cleaned him off and the flight attendant took the soiled underwear from the female passenger to discard. *Ex. 1 ¶ 11-12*.   Based on the statements of the passengers, Attorney Bertrand contacted Attorney Donnelly to discuss resolution of this matter.  *Ex. 1 ¶14*.  Attorney Bertrand revealed the name and telephone number of the female passenger to Attorney Donnelly so that he could contact her directly.  *Ex. 1 ¶15, 16*.  After Attorney Donnelly spoke with the female passenger, Attorney Bertrand contacted Attorney Donnelly to discuss the case as it was not an assault case as claimed in the Complaint.  *Ex. 1 ¶18*.

Plaintiff put forth a monetary demand but also demanded that the flight attendant assigned to E.F. to be fired. *Ex. 1 ¶21*.  Having the flight attendant fired would provide E.F. with no remedy and would serve as merely a punitive measure, thus, it is more than reasonable to assume that E.F.'s mother desired the flight attendant to be fired to satisfy her own interests in

4

59421.1

this litigation. Attorney Bertrand informed counsel that firing the flight attendant was not appropriate and that no Court could grant such a remedy. *Ex. 1 ¶22.* America West responded with a monetary amount, however, Plaintiff never responded to America West's offer. *Ex. 1 ¶23, 24-25.* Attorney Donnelly was then removed as counsel shortly thereafter. *Ex. 1 ¶26-27.*

Given the breakdown of settlement negotiations despite being very close monetarily, there is no doubt that E.F. it would be appropriate for this Court to appoint a guardian ad litem. As done in *Rubin,* it is necessary in this litigation that a guardian be appointed so that someone could make sure that the most appropriate positions are asserted on behalf of E.F. since said positions may conflict with the position of E.F.'s mother. Specifically, a guardian should be appointed as settlement may be in the best interests of E.F. but may conflict with the mother's desire to punish America West as evidenced by her demand that the flight attendant be fired. If this matter were to go to trial, Plaintiff would be hard pressed to proffer evidence which would establish that E.F. was damaged because a female passenger cleaned him off instead of a uniformed flight attendant (male or female). Further, if this matter proceeds in absence of settlement, America West would have to take further action to defend itself, including but not limited to deposing E.F. and having E.F. submit to an independent medical examination by a qualified psychiatrist. A guardian ad litem would be able to assess whether it is in the best interests to continue with litigation or to settle this matter without having a personal stake in the litigation. While she may feel that she is acting in the best interests of E.F., it is undoubtedly difficult for a mother to separate her personal feelings from the best interests of her child and the demand for the firing of the flight attendant is evidence that E.F.'s mother may not be able to separate her own feelings from the best interests of E.F.

5

59421.1

**Conclusion**

Thus, since it is within the discretion of this honorable Court pursuant to Fed. R. Civ. P. 17(c), America West asks that this Court appoint a guardian ad litem to act solely in the best interests of E.F.

WHEREFORE, the Defendant, America West Airlines, Inc., respectfully requests that this honorable court grant its Motion to Appoint a Guardian Ad Litem and take the necessary steps to select an appropriate guardian on behalf of the Plaintiff, E.F.

    Respectfully submitted,
    AMERICA WEST AIRLINES, INC.,
    By Its Attorneys,

    /s/ Carey Bertrand
    Maynard M. Kirpalani, BBO#273940
    Carey Bertrand, BBO#650496
    Wilson, Elser, Moskowitz,
       Edelman & Dicker, LLP
    155 Federal Street
    Boston, MA 02110
    (617) 422-5300

**Certificate of Service**

I, Carey Bertrand, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the NEF on June 22, 2006.

    /s/ Carey Bertrand

6

59421.1

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| E.F.,<br><br>        **Plaintiff**<br><br>v.<br><br>**AMERICA WEST AIRLINES, INC.,**<br><br>        **Defendant** | C.A. No. 05-11391GAO |

### AFFIDAVIT OF CAREY L. BERTRAND

I, Carey L. Bertrand, hereby depose and state as follows:

1. I am an attorney duly licensed to practice law in the Commonwealth, and I am an associate at the firm of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP in Boston, which represents American West Airlines, Inc. in this matter.

2. During the summer of 2005, I was able to speak with two passengers who were on board flight 526 on February 12, 2004 from Boston to Phoenix.

3. Jack Ward was seated next to the minor plaintiff and his sister during the flight.

4. Mr. Ward informed me that during the flight, the minor plaintiff's sister informed him that the boy had an "accident" in his pants.

5. Mr. Ward informed me that he escorted the boy to the rear of the plane and informed a flight attendant stationed near the bathroom about the "accident."

6. Mr. Ward informed me that a grandmotherly passenger offered to take into the bathroom to clean him.

7. Mr. Ward said that the door was open while the female passenger cleaned the boy off. He stated that he did not go into the bathroom nor did he assist in any way with the cleaning.

59871.2

8. Pamela Carleton was in the area of the bathroom when Mr. Ward informed the flight attendant of what had happened.

9. I spoke with Ms. Carleton and she informed me that she offered to help clean the boy off in the bathroom.

10. She told me that she brought the boy into the bathroom, she removed his pants and underwear and she sat him on the toilet while she cleaned him off.

11. She also told me that the bathroom door was open while she cleaned him off since the space was so small and a flight attendant was outside of the bathroom while she cleaned him off.

12. Ms. Carleton gave the flight attendant the dirty underwear which was discarded.

13. Since the boy did not have any other clothes with him, Ms. Carleton informed me that she put the pants back on the boy without underwear.

14. I spoke with Attorney Donnelly over the phone and informed him of what I had learned, that a man, as alleged in the Complaint, did not clean off the boy.

15. Although America West was under no obligation at that time to reveal the name or contact information of the passenger who cleaned the boy off, I provided Attorney Donnelly with the contact information for Ms. Carleton in hopes of fostering settlement discussions.

16. Attorney Donnelly informed me that his client would want him to speak with this passenger himself.

17. Attorney Donnelly informed me weeks later that he had spoken with Ms. Carleton and informed me that it did not matter that a female passenger had cleaned the boy off.

59871.2

18. We discussed that this was clearly not an assault case as alleged and he stated that the damage to the boy resulted from America West permitting a passenger to clean him off instead of an America West employee.

19. I encouraged him to put forth a settlement demand.

20. Settlement negotiations began and we agreed to hold off on discovery to focus on settlement.

21. In May of 2005, Attorney Donnelly informed me that his client's demand was for fifteen thousand dollars ($15,000.00) and for the flight attendant to be fired.

22. I informed Attorney Donnelly that the request for firing the flight attendant was inappropriate and that no Court could grant his client such a remedy.

23. In respond to this demand, I offered $10,000.00 to settle this matter.

24. Several days went by and I did not hear from Attorney Donnelly.

25. I called him and faxed him asking him whether his client was going to accept the offer of $10,000 but I received no response.

26. On May 22, 2006, Attorney Donnelly informed me his client was considering retaining new counsel.

27. On May 31, 2006, Attorney Donnelly confirmed that his client had terminated their relationship.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 22nd DAY OF JUNE, 2006,

/s/ Carey L. Bertrand
Carey L. Bertrand

59871.2